FILED
2021 Nov-30 PM 10:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | |
|---|---|
| **TAKIYA LAWSON MCCANTS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No. 2:21-CV-01305-MHH** |
| v. ) | |
| ) | **JURY TRIAL DEMANDED** |
| **NATIONAL MENTOR** ) | |
| **HEALTHCARE, LLC, d/b/a** ) | |
| **ALABAMA MENTOR,** ) | |
| ) | |
| **Defendant.** ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

Comes now Plaintiff **Takiya Lawson-McCants** ("Plaintiff") to file this Response in Opposition to the Motion to Compel Arbitration filed by Defendant **National Mentor Healthcare, LLC, d/b/a Alabama Mentor** ("Defendant" or "Alabama Mentor") on the 15th day of November, 2021. As grounds, Plaintiff cites the following facts and legal authority:

### FACTUAL BACKGROUND

1. Defendant is a national chain of home health care providers. It serves adults and children with intellectual and developmental disabilities in 40 states, including the Alabama Mentor chapter, where Plaintiff has been employed. For its first 53 years, it operated without a mandatory arbitration policy.

2. Beginning in May 2019, Plaintiff began working for Alabama Mentor as a therapist. Her assignment focuses on assisting adults with developmentally disabled foster children and conducting on-site visits to foster homes to ensure that proper therapeutic protocols are in place.

3. In the summer of 2019, Plaintiff lodged her first complaint with Alabama Mentor's Director of Services regarding the repeated use of racially offensive language in the workplace by another employee, Alex Morgan, who at the time worked as a program services coordinator.

4. Plaintiff was not the only employee to initiate internal complaints of discriminatory conduct by Morgan. Courtney Craig, another African American, made similar complaints to management in the 2019/2020 time frame.

5. In June 2020, Craig resigned, but shortly after her departure, she left a review on the job-seeking and networking site Indeed.com, where she described Alabama Mentor as a poor work environment for "people of color."

6. Within months of a publicly available commentary on a job board about the poor racial environment at its Alabama offices, on September 11, 2020, Defendant adopted a companywide mandatory arbitration policy effective September 13, 2020, for "new hires."[1] While the memo, which was circulated to management-level officials, alludes to the policy being broadened to eventually include employees hired prior to the September 13 cutoff and for existing employees to receive the agreement "to review and sign on a state by state basis," the document describes this process as occurring "[l]ater in the fall." *See* Exhibit A, Defendant's Motion to Compel Arbitration.

7. The fall of 2020 turned into the spring and the early summer of 2021 without Alabama Mentor circulating any mandatory employment agreement to its pre-September 13 2020 employees or informing those employees of any new arbitration policy. Under basic contract law, a policy that is never published to employees creates no meeting of the minds and provides no bargained-for consideration. *See, e.g., Ex parte Holland Mfg. Co.*, 689 So. 2d 65, 66 (Ala. 1996) ("No contract can be formed without an offer, acceptance, consideration, and mutual assent to the terms essential to the contract." (citing *Steiger v. Huntsville City Board of Education*, 653 So. 2d 975 (Ala. 1995)).

---

[1] The arbitration policy purports to be mandatory, applying to covered employees whether or not they actually sign the policy. *See* Exhibit B, Plaintiff's Motion to Compel.

8. In the interim, Plaintiff initiated another series of complaints about racially offensive behavior at Alabama Mentor. In late March 2021, Plaintiff orally reported to the Birmingham Program Director for Alabama Mentor that Alex Morgan had begun to interfere with her job assignments in retaliation for Plaintiff reporting Morgan to management. Plaintiff alleged that Morgan, who had been promoted to a leadership position in late 2020, had begun removing her from assignments and actively encouraging foster parents to complain about her.

9. In early April 2021, Plaintiff sent an email to the HR manager at Alabama Mentor titled "Racism and Harassment in the Workplace," outlining Morgan's two-year pattern of toxic racist remarks and her actions to undermine Plaintiff after she first reported Morgan in 2019.

10. A month later, on May 28, 2021, Plaintiff and another Black employee, Carla Jackson, filed charges of race discrimination against Defendant with the Equal Employment Opportunity Commission. The EEOC acted promptly regarding Plaintiff's complaint, issuing a Right to Sue on June 30, 2021. Plaintiff received her notice by mail on July 5, 2021.

11. Upon information and belief, the EEOC's practice is to inform employers with legal representatives of the issuance of a Right to Sue notice electronically the same day of its entry. In this case, Littler Mendelson, P.C., a

national defense firm with a Birmingham office, had been in email communication with the EEOC regarding Plaintiff's charge and would have been Defendant's point of contact for the charge.

12. On July 9, 2021, within ten days of learning that one of its Alabama Mentor employees had received the EEOC's administrative permission to proceed with litigation, Defendant suddenly implemented its arbitration policy in its Alabama office. Plaintiff and Jackson each received their first notification of Defendant's arbitrary policy in the form of company emails containing the agreement.

## **LEGAL ARGUMENT**

This case is not a run-of-the-mill arbitration analysis. Rather, the facts and circumstances here potentially pose a novel question that this circuit has never squarely answered: Is an arbitration agreement enforceable if the motivation behind it was an employee's engagement in protected activity?

To be sure, the Eleventh Circuit has held that an arbitration agreement governing Title VII claims is enforceable whether or not an employee signs it and that continued employment constitutes valid acceptance of arbitration. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369-70 (11th Cir. 2005). The circuit has concluded that as a general proposition, firing an employee for refusing to sign

5

an arbitration agreement is permissible under federal employment law. *Weeks v. Harden Manufacturing Corp.*, 291 F.3d 1307, 1315-16 (11th Cir. 2002).

But the circuit's precedents **do not** immunize arbitration clauses from Title VII scrutiny. In *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1278 (11th Cir. 2008), the circuit distinguished the employee in *Weeks*, who had not made any prior complaint of discrimination, from the plaintiff in *Goldsmith*, who had already filed an EEOC charge and was terminated after refusing to sign a mandatory agreement that would have required his discrimination claim to be arbitrated. The *Goldsmith* court found that "terminating an employee immediately after and because he refused to relinquish his right to a jury trial for his pending charge" is actionable under Title VII's retaliation clause. *Id*. Furthermore, the circuit found in *Goldsmith* that evidence that the arbitration agreement was extended to other employees as part of a new company policy did not preclude a retaliation claim, on the grounds that there was evidence that at least one other employee who refused to sign the agreement was not fired. *Id*. at 1272, 1279.

*Goldsmith*, therefore, stands for the proposition that an employer's legal right to impose arbitration on its employees does not permit a secondary right to use arbitration as an instrument of retaliatory termination. It would be incongruous with this circuit's case law to hold to the contrary by permitting a mandatory

6

arbitration clause to be simultaneously retaliatory and legally enforceable. A line of similar circuit decisions holds that the retaliation provision of Title VII (or 42 U.S.C.A. § 1981) is triggered when an employer's response to a direct threat of litigation is to force an employee to choose between losing her job and forgoing her legal rights, even though a waiver of legal rights is typically a valid tool for settling employee disputes.[2]

*Goldsmith* is distinguishable in that Plaintiff was not terminated for her refusal to sign a mandatory arbitration agreement. But this circuit has clarified that in the context of a retaliation claim, an adverse action need not rise to the level of a termination or otherwise negatively alter the terms and conditions of employment; the anti-retaliation provision of Title VII prohibits "any employer action that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Tolar v. Bradley Arant Boult Cummings LLP*, 997 F.3d 1280, 1290 (11th Cir. 2021) (internal quotations omitted). Therefore, the fact that mandatory arbitration does not extinguish a legal claim does not preclude a finding that an

---

[2] This circuit has held repeatedly that firing employees who refuse to abandon or waive their legal claims constitutes unlawful retaliation. *See Knox v. Roper Pump Co.*, 957 F.3d 1237, 1246 (11th Cir. 2020) (employee fired for refusing to sign waiver of potential discrimination claims); *Chapter 7 Trustee v. Gate Gourmet, Inc.,* 683 F.3d 1249, 1253 (11th Cir. 2012) (employee's light duty reassignment was contingent on withdrawing EEOC charge); *Wright v. Southland Corp.*, 187 F.3d 1287, 1305-06 (11th Cir. 1999) (employee terminated after rejecting demand to drop EEOC charge).

arbitration policy might have discouraged protected activity. *See Monaghan v. Worldpay U.S., Inc.*, 955 F.3d 855, 861 (11th Cir. 2020) (retaliation clause of Title VII "protects employees more broadly–and is more easily satisfied–than the standard applicable to claims of discrimination").

Defendant's motion concedes in Footnote 4 that an otherwise-legal arbitration clause might be retaliatory if the "causal connection prong of a retaliation analysis" is established. Retaliation claims under Title VII are governed under the familiar *McDonnell Douglas* burden-shifting framework. *See Johnson v. Miami Dade County*, 948 F.3d 1318, 1325 (11th Cir. 2020). A plaintiff must establish a threshold prima facie case that there is "some causal relationship" between engaging in protected activity and the challenged employment action. *Id*. If the plaintiff does so, the defendant's burden is to articulate a legitimate, nonretaliatory reason for its action. *Id.* If that burden is met, the plaintiff has the ultimate burden of showing at least a triable issue of fact as to whether the defendant's reasons were real or pretextual. *Id*.

Defendant suggests in its motion that there is no causal link between Plaintiff's May 2021 EEOC charge and the company's implementation of an arbitration policy. That point of view conveniently reorganizes the timeline and omits several relevant details. First, the company's September 2020

implementation of a companywide arbitration mandate was explicitly limited in scope to <u>new hires</u>, not existing employees like Plaintiff. While there is a reference in the arbitration email in Defendant's Exhibit A to the policy being implemented universally "later in the fall" of 2020, that company wide rollout pointedly did not happen. Defendant acknowledges that approximately ten more months, nearly a year, passed before a mandatory arbitration agreement was circulated to the Alabama Mentor office's list of employees who were on board prior to September 2020.

Arbitration did not make its way to Alabama Mentor until July 9, 2021, ten days after the issuance by the EEOC of a Plaintiff's Right to Sue, which Defendant's counsel would have been notified about by email on June 30. Defendant's motion provides little in the way of concrete evidence to support its notion that one event had nothing to do with the other; it offers no explanation of why the "later in the fall" of 2020 timeline for extending arbitration to existing employees was rolled back nearly a year, at least for the Alabama office; how many offices other than Alabama were subjected to all-employee arbitration policies in July 2021; or even whether the supposedly companywide mandate is complete as of this writing. Tellingly, Defendant does not even present evidence

that it has actually enforced the arbitration agreement as to any pre-September 2020 employee other than Plaintiff in a company with 40,000 employees.

Acceptance at face value of Defendant's representation of the scope of its arbitration mandate, and the consistency with which it has been enforced, requires a four-word policy: trust but don't verify. This circuit has more appropriately concluded that underlying disputes as to the enforceability of arbitration agreements should be reviewed under a "summary judgment-like standard." *See Burch v. P.J. Cheese, Inc.,* 861 F.3d 1338, 1346 (11th Cir. 2017) (interpreting 9 U.S.C.A. § 4). Under such a review, when an employer moves to compel arbitration, the court may evaluate as a threshold inquiry whether there is a genuine dispute of material fact as to whether the elements of an arbitration contract are satisfied. *Id*. One element of enforceability is whether there "are grounds that exist in law or in equity for the revocation of any [arbitration] contract." 9 U.S.CA. § 2. Then, if a traditional triable issue of fact exists as to any of the elements of contract or revocation, the court may conduct its own bench trial on whether an arbitrary clause is binding. *Burch*, 861 F.3d at 1347-48.

Accordingly, Plaintiff urges the Court to grant a 60-day window, until January 31, 2022, for Plaintiff to conduct written discovery and a maximum of three depositions limited solely to the circumstances of the arbitration mandate

Defendant seeks to enforce. Plaintiff asks for a deadline of February 7, 2022, for the respective parties to move for summary judgment on the specific question of whether Defendant's mandatory arbitration policy is binding on Plaintiff.

Submitted the 30th day of November, 2021.

s/Artur Davis

Artur Davis
**HKM Employment Attorneys LLP**
2024 3rd Ave. N, Suite 307
Birmingham, AL 35203
Direct: 205-881-0935
adavis@hkm.com

Brian Noble
**Capstone Law LLC**
2119 3rd Ave. N, Suite 202
Birmingham, AL 35203
Direct: 205-578-1210

Co-counsels for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on November 30, 2021, **Plaintiff's Response in Opposition to Defendant's Motion to Compel Arbitration** was served electronically upon the attorneys of record for Defendant listed below:

Stephanie Houston Mays
**Maynard Cooper Gale**
1901 6th Ave. North

11

>Birmingham, AL 35203
>smays@maynardcopper.com

>/s/ *Artur Davis*
>Artur Davis
>**HKM Employment Attorneys LLP**
>2024 3rd Ave. N, Suite 307
>Birmingham, AL 35203
>adavis@hkm.com
>205-881-0935

12